IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:21-00135

RUTH MARIE PHILLIPS,
    also known as "Marie Phillips"

## MEMORANDUM OPINION AND ORDER

The Court held a restitution hearing on March 31, 2022. The Court ordered that Ms. Phillips owes $4,656,540.51, without interest, as restitution to the River Valley Child Development Services (Victim) pursuant to her plea agreement. This value reflects the offset for the money Ms. Phillips has already repaid to the Victim. The following opinion discusses the factors the Court considered in reaching this amount.

## BACKGROUND

Ms. Phillips plead guilty to Theft Concerning Program Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(1)(A). *See* ECF No. 39. She fraudulently obtained and converted approximately $964,012.86 of the Victim's funds between July 1, 2016, and June 30, 2017. ECF No. 68. While Ms. Phillips was sentenced on January 24, 2022 (ECF No. 59), the Government moved to Defer Restitution Determination. ECF No. 54. A hearing regarding the restitution owed was held on March 31, 2022. ECF No. 81.

## DISCUSSION

The Mandatory Victims Restitution Act ("MVRA") provides that, for crimes committed by fraud or deceit, the court shall order restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). When ordering restitution, the court "shall order restitution to each

victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. 3664(f)(1)(A). This determination must be based on the actual losses suffered by the victim. *United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008). While "the goals of the MVRA 'are both compensatory and penal,'" the statute does not permit the victim to gain a "windfall" nor the defendant a "bailout." *United States v. Stone*, 866 F.3d 219, 226 (4th Cir. 2017) (quoting *United States v. Ritchie*, 858 F.3d 201, 214, 216 (4th Cir. 2017)).

In calculating the victim's loss, the MVRA provides that is the Government's burden to prove the amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e). Once the Government has satisfied this burden, "the burden shifts to the defendant to dispute the amount with her own evidence." *United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018) (citing *Stone*, 866 F.3d at 227). When there is a dispute as to the proper amount of restitution, this is settled by the court. 18 U.S.C. § 3664(e). The MVRA provides for several categories of losses for which a victim must be reimbursed. These losses include the return of property or a payment equal to the value of the property, lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. 18 U.S.C. § 3663A(b).

The Government outlined several categories of loss it argued that Ms. Phillips should be ordered to pay. First, the Government noted that Ms. Phillips agreed in her Plea Agreement that she owes at least $4,721,731.76, offset by any money returned to the Victim. ECF No. 39 ¶ 5. The Government further argued that the Victim was entitled to:

- payment of taxes and penalties and interests that the Victim incurred with the IRS for the June 30, 2020, Tax Period

- attorneys' fees

- payment for the Public Relations firm hired

While the Court addressed argument related to these amounts at the hearing, the Court will detail that discussion below.

1. Tax Penalties and Interests

The Government initially argued that the Victim was entitled to $52,505.58 for the unpaid taxes in addition to the tax penalties that were charged by the IRS as a result of the Victim's failure to timely pay taxes. However, the Government conceded that this amount should not have included the $13,642.93 in unpaid taxes, and thus the total amount for IRS penalties and interest amounts to $38,862.65.

Other courts have considered the issue of whether taxes and penalties are appropriately awarded in a restitution order under the MVRA. Such loss must be an "actual loss." 18 U.S.C. § 3663A. In *United States v. Eyraud*, the Ninth Circuit determined that the victim's "taxes and penalties were foreseeable and directly and proximately caused by [the defendant's] embezzlement, with no break in the chain of causation." 809 F.3d 462, 469 (9th Cir. 2015). It was only after the defendant had depleted the victim's funds and entered false tax payments did the victim fall behind on tax payments. *Id.* Additionally, the tax issues occurred in the time most directly related to the defendant's fraud. *Id.*

The situation before the Court here is not analogous. Here, Ms. Phillips was the Chief Financial Officer for the Victim. The Victim received part of its funding through the acquisition of grant money. In effectuating her fraud, Ms. Phillips inflated the amounts of money requested in grants and diverted that money coming in to herself and to Attitude Aviation. *See* ECF No. 39 at 22. Such a scheme did not cause the employee withholdings to increase, nor keep the Victim from

having the funds to pay for Social Security and other withholdings. Further, the tax penalties requested by Victim are for several years after Ms. Phillips' offense conduct. As noted at the restitution hearing, the Court cannot find that Victim's losses for tax penalties incurred from the mismanagement of the accounts is directly and proximately related to her fraud scheme. The Court does not include the $38.862.65 of tax penalties and interest in the restitution award.

2. Attorneys' Fees

The Government requested that the Victim's attorneys' fees in the amount of $6,650.17 be included in the restitution order. Defendant did not object to this amount being included in the final restitution award. Therefore, the $6,650.17 is included in the restitution award.

3. Public Relations Fees

The Government requested $234 for fees paid to a public relations consultant. The Victim hired a consultant to mitigate the damage to the Victim's reputation in the community. At the restitution hearing, the Court found that such a loss is too indirect to be ordered as a part of the restitution, so this amount is not included in the restitution award.

4. Calculating the Final Restitution Award

The final amount of loss constitutes the agreed starting point for restitution, $4,721,731.76, plus the Victim's legal fees, $6,650.17, for a total amount of $4,728,381.93.

The parties agreed that Ms. Phillips has returned $71,841.42 and that this sum should be applied to the total restitution amount as an offset. Thus, the final restitution amount is calculated as the total loss amount ($4,728,3813.93) minus the offset amount ($71,841.42), for a total amount of $4,656,540.51. Because this is such a substantial amount, the Court orders that interest will not be applied to this amount.

5. Terms of the Restitution Order

At the restitution hearing, the parties discussed the manner in which Ms. Phillips will make payments toward her restitution obligation based on her future income. Her potential income includes retirement benefits, social security benefits, and spousal benefits. Currently, Ms. Phillips has a pending challenge before the Kanawha County Circuit Court challenging the West Virginia Consolidated Public Retirement Board's decision to deny her retirement benefits. If Ms. Phillips is not successful in this appeal, she will receive a backpay award of her contributions paid into the retirement system, and this amount will be applied toward her restitution obligation. If she is successful in her appeal, then she will receive backpay of monthly benefit and future monthly benefits. Ms. Phillips' Social Security will cease while she is incarcerated, but she will continue to receive her spousal benefit.

The Court decided that, to the extent that Ms. Phillips receives any payment during her period of incarceration, whether it is a backpay or an ongoing monthly payment for retirement or similar benefits, 50% of that payment be paid toward restitution. Once she is released, 25% of her benefit payments per month from any and all sources will be attributed to her restitution obligation. In the event that Ms. Phillips' appeal is unsuccessful, the lump sum payment she would receive for the contributions she paid into the retirement system would be applied toward her restitution obligation in its entirety.

6. Remaining Issues

At the restitution hearing, the Government noted that Ms. Phillips appeared to have sent funds to several family members and requested that the Court require her to disclose what accounts she sent funds to. The Government indicated that money was sent to family members for college funds and start-ups, and suggested that, if more information was disclosed regarding these transfers, the Government could locate and seize these funds through asset forfeiture to apply the

funds to her restitution obligation. The Court directed the Government to file a motion before it would consider the request.

The Government also raised the issue of the Marriott timeshare that Ms. Phillips claims has been taken back by Marriott due to her failure to pay the fees associated with it. As. Ms. Phillips is under an obligation pursuant to her plea agreement to cooperate in determining whether there are assets, the Court directed the Government to prepare a specific request for information from Ms. Phillips and allow her and her counsel time to investigate the matter.

## CONCLUSION

The Court **ORDERS** Ms. Phillips to pay $4,656,540.51 in restitution, due and payable immediately. Additionally, Ms. Phillips will be placed on the Treasury offset program.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

        ENTER:    April 7, 2022

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE